PAULINE HINGST, Appellant, v. ARTHUR JONES, Executor of the Estate of Isaac Spray, Deceased, et al., Appellees.

Wills: MENTAL CAPACITY: EVIDENCE. In this action to set aside the probate of a will on the ground of mental incapacity and undue influence the evidence is held insufficient to justify setting the will aside.

*Appeal from Henry District Court.*—HON. W. S. WITHROW, Judge.

SATURDAY, JUNE 20, 1914.

ACTION to set aside the probate of a will. At the close of plaintiff's evidence the trial court directed a verdict for the defendants and dismissed the petition. The plaintiff appeals. —*Affirmed.*

*E. L. Hirsch* and *L. L. Beery,* for appellant.

*J. C. McCoid,* for appellees.

EVANS, J.—The decedent, Isaac Spray, died testate February 10, 1912, and his will was duly admitted to probate. Subsequently this action was brought. The plaintiff is the oldest daughter of the deceased and his only child by his first marriage. The testator was first married on February 23, 1888.

Plaintiff was born of the marriage in December of the same year. Before her birth, however, her parents had separated. This occurred in August. The plaintiff never lived with her father, nor does it appear that she ever visited him. In 1896 the testator married his present widow. He left surviving him such widow and three children of the marriage. His will gave all his property to such widow and her three children. He was sixty-nine years of age at the time of his death. In the spring or summer of 1911 he was more or less injured upon the femur bone as a result of concussion while riding upon a train. Some time later abscesses developed. In October he came under the care of his physician, and continued under his care until his death in February following. The will was executed on December 9th. The ground of contest laid in the petition was lack of mental capacity and undue influence. In support of the petition the plaintiff examined the two subscribing witnesses, one of whom was the testator's physician. So far as their opinions were concerned, these witnesses were adverse to the plaintiff as to the claim of undue influence or lack of mental capacity. No witness testified to any fact tending to show undue influence. Nor did any witness testify to his opinion of a lack of mental capacity. The plaintiff relies wholly upon specific facts testified to by the aforesaid witnesses as being circumstantial and sufficient in themselves to require a submission of the issue to the jury. The substance of these facts are set forth in plaintiff's brief herein as follows:

"In the spring of 1911 he was injured while shipping cattle to Chicago. Later he complained of pain. On October 10 or 11, 1911, a physician was called. Mr. Spray continued under the doctor's care until his death in February, 1912. When the physician was first called Mr. Spray had pain in his bowels and in the limb. Mr. Spray had heart trouble and arteriosclerosis, or hardening of the blood vessels, due to old age. The nature of the heart trouble was a kind of murmur, not normal. He also had abscesses. His will was made December 9, 1911. He signed the will by mark. About two weeks

prior to the day the will was made an abscess had been opened which had not entirely healed. His system was affected by the pus in the abscess. It was caused by an injury to the femur bone. The wound was discharging pus. The pus was the result of poison in the system, and the poison was absorbed more or less. After the abscess was lanced it was dressed once or twice a day. After the wound was dressed, Mr. Spray was more or less tired. On the same day, a short time before the will was signed, the wound was dressed. At that time he looked like he had been sick and appeared tired. He was in bed at the time. He was confined to his bed most of the time from October, 1911, until he wrote the will, and was only up with assistance. This condition continued until his death in February following. The month before he was confined to the bed he looked bad and appeared to be a pretty old man. He had always spoken well of his daughter, Pauline, the plaintiff. Prior to making the will he frequently said that Pauline would share in the estate. A few months before the will was made he said he thought as much of Pauline as the rest of his children, and he was going to treat her the same as the others.

"In the petition for divorce from plaintiff's mother Mr. Spray alleged that one child, Pauline Spray, then over two years old, was born to him and the defendant therein, that said child was in the custody of her mother, and he stated that he did not want to relieve himself from liability for its care and support, and asked for permission to see the child. This application was sworn to by the testator before W. S. Withrow, as notary. He had always inquired about her, and said he would like to have her come to his house to visit, but did not think she would be acceptable to his wife. He said he had had enough trouble about it. The day the will was signed Mr. Spray said he did not know whether Pauline was his daughter or not; that he did not think she was. He stated that a girl in Burlington claimed to be his daughter, but he didn't think she was.

"The estate consists of a farm of three hundred and twenty acres worth at least $60 per acre and personal property worth at least $2,000."

The foregoing statement of facts does not quite reflect the real state of the record; the context being necessary to a full understanding of some of them. But they may be accepted in their present form as sufficient for the purpose of our present consideration. They are clearly insufficient to have sustained a verdict adverse to the will. The facts stated, whether considered separately or as a whole, are consistent with rational conduct and normal mental capacity. The fact that testator should have expressed a doubt as to the paternity of his daughter is a painful one, but it was not intended for the public ear. It does not appear that he had ever before called such paternity into doubt, and stress is laid by plaintiff upon this fact. But doubt upon his part was not inconsistent with his silence. When he spoke, it was neither wanton nor indifferent. He was performing a solemn act, and was seeking information from the scrivener of his will as to the method of passing his estate to the members of his family, free from any claim of inheritance on the part of the plaintiff. In the light of his family history, no jury would be warranted in saying that such expression of doubt on his part, however erroneous, was sufficient proof of hallucination or mental aberration.

It is urged that he had arterial sclerosis or hardening of the arteries. But the physician testified that this was only to such degree as was incident to his age. Theoretically old age is a continuing process of hardening of the arteries. The fact that he had abscesses and pus formations has little significance for the purpose of the case. This is a common incident to human life at every stage. The physician testified that he was free from fever and from pain.

We think that the verdict was properly directed, and the order is—*Affirmed.*

LADD, C. J., and WEAVER and PRESTON, JJ., concur.