In the ESTATE OF T. W. HENRY, Deceased, In re Contest of Will. SARAH A. C. HENRY, Proponent, Appellee, v. MAUD MAY HENRY LAWSON and HARRY HENRY, Contestants, Appellants.

**Wills:** BASTARDS: PRESUMPTION AS TO LEGITIMACY. The paternity and legitimacy of one begotten in lawful wedlock and while husband and wife were living together as such is conclusively presumed; and where a will contest for mental unsoundness was based upon an insane delusion of the testator concerning the paternity of his son, the presumption of his legitimacy, when born under such circumstances, was sufficient to take that issue to the jury.

**Same:** CONTEST: INSANE DELUSION. A testator's erroneous belief concerning the paternity of his son was admissible as evidence of his insane delusion on the subject, but standing alone was not sufficient to establish such a delusion and overthrow his will.

**Same:** EXPERT EVIDENCE: INSANE DELUSION. A hypothetical question and answer involving an insane delusion, which permitted the witness to draw his own inferences of fact from the recital of the evidence and to apply his own conception and definition of an insane delusion, was improper; as it was for the court to define an insane delusion and for the jury to draw its own inferences from the evidence offered.

*Appeal from Polk District Court.*—HON. W. H. MCHENRY, Judge.

SATURDAY, NOVEMBER 28, 1914.

THIS is a will contest. The testator was T. W. Henry, who died a resident of Polk county in January, 1913. The

chief beneficiary designated in the will was the surviving
widow. The decedent left surviving him a son and daughter
by a former marriage. These are the contestants of the will.
The only ground of contest attempted to be proved was that
the decedent was of unsound mind in that he was under an
insane delusion concerning the paternity of his son. At the
close of the evidence, the trial court directed a verdict for the
proponent. The contestants appeal.—*Affirmed.*

*Fred F. Keithley, Potts; Conaghan & Powers,* and *R. M.
Davidson,* for appellants.

*Strock & Wallace,* for appellee.

EVANS, J.—The will in question gave to the children of
decedent, Maud May Henry Lawson and Harry Henry, $500
and $25, respectively. The will was executed in 1895. At the
time of his death, the decedent owned a home worth from
$10,000 to $15,000. At the time of his death he was engaged
in manufacturing a certain article used for cleansing purposes.
Such business had yielded a profit of $4,000 per annum. One
witness estimated the value of the "business" at $35,000.
The record does not disclose what property was owned by the
decedent at the time of the execution of the will.

The salient fact which was put forward by the contestants
in proof of the mental unsoundness of the testator was his
denial of the paternity of his son.

The decedent was first married at Oregon, Ill., in 1873,
to Josephine Schott. Three children were born of this mar-
riage. The second-born died in infancy. The other two are
the contestants. The daughter was born in 1874, and the
son December 15, 1876. About 1877 or 1878, the decedent
and his wife separated. The occasion of the separation was
that the decedent professed to believe that his wife had been
guilty of infidelity, and that he was not the father of the
youngest child. So far as appears in this record, he disclosed

to no one his reasons for this belief.  He stated to one or two friends, who remonstrated with him, that he had the evidence which satisfied him, and that he knew what he was doing.  In 1880 his wife obtained a divorce from him.  There was no property; the decedent having failed in business a short time previously.  The decedent came to Des Moines and engaged in business there, and was so engaged at the time of the execution of the will, and so continued up to the time of his death.

The assignments of error are directed in large part to complaint of rulings of the court in rejecting offered testimony.  We need not dwell upon these in their details.  We think that some of the testimony which was rejected by the court was admissible.  Even though such testimony be deemed as admitted, the question of the sufficiency of the evidence to go to the jury still remains.

The son having been begotten in lawful wedlock, while husband and wife were living together, his paternity and legitimacy are conclusively presumed.  The contestants also offered testimony of the reputed chastity of the mother and of the likeness of the son to his father.

1. WILLS: bastards: presumption as to legitimacy.

If the contestants had been entitled to go to the jury on the whole case, we think they would have been entitled to introduce this testimony as strengthening their case before the jury.  It added nothing, however, to their mere right to have the case submitted to the jury.

The paternity of the child was established by legal presumption, and this was sufficient of itself to carry this element to the jury, if the other elements of the contest had been sufficiently supported.  .

It was not enough for the contestants to show an erroneous belief on the part of the decedent, in order to establish an insane delusion.  Erroneous belief is a circumstance which may properly be considered as tending to the proof of decedent's delusion, but of itself is not sufficient for that purpose.

2. SAME: contest: insane delusion.

No other circumstance is shown in this record as tending to prove that the mind of the decedent was diseased and his belief a delusion. At the time of the separation, he was less than 30 years of age. He continued to do business until his death at the age of 62. No witness testified to any act on his part at any time indicating mental aberration. No witness testified to his opinion that he ever showed indications of mental unsoundness.

Whether the evidence which the decedent claimed to have of the infidelity of his wife was credible or plausible does not appear. It does not appear that he ever communicated it. His conduct was at all times consistent with his belief. The father and son never spoke to each other. The decedent was kind and tender to his daughter, and aided her substantially in acquiring an extensive education. On the subject of his belief as to the paternity of the son, he was not communicative. All that he ever said on the subject was said at the beginning to two or three close friends and to the wife herself. Whether the evidence, therefore, which satisfied his mind was such that no rational person would be likely to believe it, or was such that no person could believe, and yet be rational, is quite beyond the possibility of proof. In the absence of such proof, some other evidence than mere erroneous belief is essential to the contestants' case.

The contestants examined two physicians as expert witnesses. The hypothetical question put to them recited the evidence introduced by contestant. Upon such recital, each physician was asked to state his opinion as to whether the decedent was under an insane delusion. One of such questions, with the answer thereto, was as follows:

3. Same: expert evidence: insane delusion.

Now, doctor, assuming that a young man marries a girl about sixteen years of age, whom he has known about two years, and whom he loved with a strong, passionate love, and by his wife he has born to him two children, a girl and boy whose paternity he never questioned, and three years after the

marriage she becomes pregnant with a third child, and at about that time he meets with business reverses and goes to a neighboring town and goes in business and meets with little success, leaving his family behind him, although he continues to express his love for them and return frequently to see them and promises to move them to him. Now, assuming that about the time of the birth of this third child the father became suddenly possessed with the idea that this son was illegitimate and not his own, and he continued to entertain this idea, and that arguments of his friends failed to dispel the idea from his mind, and, upon being argued with, he failed to specify any reasons to one witness who argued with him—to one party who argued with him—and to another party he stated that he was satisfied he knew what he knew and that he had evidence, although he did not specify what the evidence was. Now, assuming that he continued to entertain this idea up to the time of the making of the will, and assuming that he continued to refuse to recognize his only surviving son, although he continued to show his love for his daughter in many acts as well as words as long as he lived, and assuming he died about the age of sixty-two years leaving a will containing this clause: 'I give and bequeath to my daughter Maude May Henry $500. Also to her brother Harry $25.00.' Basing your opinions on the facts related, what do you say as to whether or not the man maintained an insane delusion as to the legitimacy of his surviving son? A. I would say that he did.

Did this evidence entitle the contestants to go to the jury? We are clear that the expert was quite outside of his realm. Except as to an appropriate definition of "insane delusion," there was nothing in the hypothetical question that was subject to expert opinion. The recital of evidence furnished a basis for inference. The inferences to be drawn were such as would fairly arise in the mind of the ordinary person. The full effect, then, of the question and answer was that the physician drew his own inferences of fact from the recital of evidence, and applied his own conception and definition of "insane delusion." It rested solely upon the jury to draw the inferences of fact, and upon the court to define "insane delusion,"

within the meaning of the law. There was no basis in the record for the purported expert opinion, and its introduction added nothing to contestants' case.

We had occasion to consider the principal question in the recent case of *Hingst v. Jones,* 166 Iowa, 329. The facts shown therein presented a stronger case for submission to the jury than do those in the present case. Our conclusion in that case is quite conclusive against the appellants herein. To the same effect, see *Potter v. Jones,* 20 Or. 239 (25 Pac. 769, 12 L. R. A. 161), wherein the subject of insane delusion is fully discussed.

The order of the trial court is—*Affirmed.*

LADD, C. J., and WEAVER and PRESTON, JJ., concur.