ALICE J. RILEY, Appellant, v. CHARLES CASEY et al., Appellees.

WILLS: Mistake of Fact in Execution of Will. A will, executed by one of sound and disposing mind, may not be overthrown on a mere showing that testator, in the execution of the will, was *mistaken* as to the amount of property which an heir had received from other relatives, and by reason of such *mistake* disinherited such heir.

*Appeal from Adams District Court.*—HOMER A. FULLER, Judge.

FEBRUARY 17, 1919.

CONTEST of the will of Mary Casey. The contestant is a daughter, for whom no provision was made in the will. The ground of contest was an alleged insane delusion on

the part of the testatrix. There was a verdict for propo-
nents, and contestant appeals.—*Affirmed.*

*A. Ray Maxwell, William M. Jackson,* and *W. Roy
George,* for appellant.

*Meyerhoff & Gibson,* for appellees..

EVANS, J.—Mary Casey died testate, in October, 1914.
On January 24, 1912, she executed her will. She left sur-
viving her six sons and daughters. The property disposed
of by her will consisted of 80 acres of land. She devised
her property to four of her children, excluding from partici-
pation therein her son Franklin and her daughter Alice
Riley. The reason for excluding these two was stated in
the will to be that they had received some benefits by a con-
veyance from their grandmother, many years before. It
was averred by the contestant that she had not, in truth,
ever received any property from her grandmother, and that
the testatrix labored under an insane delusion in that re-
gard; and that, by reason of such insane delusion, she failed
to include the contestant as one of the beneficiaries of her
will. On the trial, evidence was introduced bearing upon
the alleged mistaken belief of the testatrix in regard to
benefits received by her daughter from her grandmother.
The facts in that regard appear without dispute. In 1895,
the grandmother, Rachel Casey, being then the owner of 80
acres of land, conveyed 40 acres thereof to Martin Riley,
the husband of the contestant, and 40 acres thereof to
Franklin Casey, brother of the contestant. These convey-
ances, however, were not wholly without consideration. The
80 acres was encumbered for $700. Martin Riley, and per-
haps Franklin Casey, had become security for considerable
sums for John Casey, the son of Rachel and the father of the

contestant, and it was the desire of Rachel to protect them on account of such liabilities. The land was worth about $40 an acre, at the time of the transfer; and Rachel made her home with the Rileys from the time of such conveyance up to her death, 9 years later. It is argued, therefore, that Martin Riley paid full consideration for what he got, and that the contestant had not, in fact, received anything from her grandmother. It appeared further that the Rileys had continued to own the land then received, and that it had increased greatly in value, being worth, later, about $150 an acre. They also had other land, to a total amount of 320 acres. These were all circumstances that might well receive the consideration of a mother in the distribution of her bounty among her children. They were also proper for the consideration of the jury, as bearing upon the question whether the mother's discrimination between her children was so unnatural and unreasonable as to indicate an insane delusion. Some evidence was introduced on the part of the contestant tending to show mental deterioration at or about the time of the making of the will. The issue was submitted to the jury, and the finding was adverse to the contestant. The finding has abundant support in the evidence. Indeed, if the verdict had been otherwise, it would have presented a very serious question of the sufficiency of the evidence to sustain it. It appeared that a previous will had been made by the testatrix in 1902, and the same is in evidence. That will also omitted the contestant and her brother Franklin from participation in the property, and gave the same reason for so doing as was given in the last will. At that time, the testatrix was 65 years of age. There was some effort to show mental deterioration at or about that time, but the evidence in that regard is very unsatisfactory.

Complaint on this appeal is directed to certain rulings

of the court, and to its instructions. It is complained that the court erred in withdrawing from the jury the issue of undue influence. We are unable to find in the record any evidence whatever tending to show undue influence. Particular complaint is made of Instruction No. 9, given by the trial court. It is said in argument that the trial court, by this instruction, charged the jury that it was not sufficient to prove an insane delusion on any one subject unless the contestant proved also a general mental unsoundness on the part of the testatrix. We have examined the instruction thus criticized, and do not find the criticism well taken. What the court instructed therein was that it was not enough to prove that the testatrix was mistaken in her belief pertaining to the facts attending the disposition of the grandmother's estate, "provided you find that the said testatrix was of sound and disposing mind at the time she executed the will." This was a correct statement of the law at this point. *In re Estate of Henry,* 167 Iowa 557. Proof of a mere mistake is not, of itself, proof of an insane delusion. A testator of sound mind may make a mistake, and may act upon it in the making of his will, to the detriment of a proper object of his bounty. But the proof of such mistake will neither invalidate the will nor subject it to reformation. A careful examination of this record satisfies us that no other verdict could have been fairly rendered, and we discover no prejudicial error. The judgment below is, therefore,—*Affirmed.*

LADD, C. J., SALINGER and STEVENS, JJ., concur.