207 N.W.2d 571 (1973)
In the Matter of the ESTATE of Bert GRUIS, Deceased.
Ben GRUIS et al., Appellants,
v.
WINNEBAGO COUNTY, Iowa, et al., Appellees.
No. 55052.
Supreme Court of Iowa.
May 23, 1973.
Winkel, Nitchals & Winkel, Algona, for appellants.
Laird, Burington, Bovard & Heiny, Mason City, and Hutchison, Buchanan, Andreasen & McClure, Algona, for appellees.
Heard by MOORE, C.J., and MASON, REES, UHLENHOPP and McCORMICK, JJ.
REES, Justice.
This is an action at law to set aside the probate of the will of one Bert Gruis. Plaintiffs alleged lack of testamentary capacity to make a valid will; a jury was *572 empanelled and at the close of all the evidence the court sustained a motion to direct, and plaintiffs-contestants appeal. We affirm.
Bert Gruis died at the age of 76 years, on November 3, 1968. He had never married, and the contestants are nieces and nephews and collectively, as a class, comprise all of his heirs at law. He had engaged in farming for many years, but in recent years had retired and lived in the town of Titonka. He was possessed of considerable property at his death, including a farm of 180 acres, a residence property in Titonka, monies on deposit, bonds aggregating over $38,000 in value, and personal property of about the value of $4800.
The will in question was executed by decedent on June 17, 1968 in the presence of R. C. Brown, an attorney of Forest City, and Mr. Brown's secretary, one E. S. Tapager. Brown was called as a witness for the proponents, and testified he had been acquainted with the testator since 1936 or 1937, and that Mr. Gruis had been his client since shortly after that time. Brown testified he had drawn wills for the spinster sisters of testator, with whom Gruis had made his home. The first item of legal business he could definitely pinpoint would have been in the year 1942.
Brown testified Gruis came to his office and discussed the preparation of a will, and that he thereafter prepared the will and notified testator it was ready for execution. He testified he went over each and every provision of the instrument in detail with the testator, that he read the entire instrument to Gruis, and that together they went through it paragraph by paragraph. Brown further testified he explained the essentials of due execution of the will to the testator, advising him it was necessary that the execution of the will be witnessed by two subscribing witnesses, and that his secretary, Mrs. Tapager, would be willing to act as a witness. Testator indicated such arrangement was satisfactory to him, and Mrs. Tapager was summoned to witness testator's signature to the will, and Brown testified the will was then executed by Gruis in his presence and in the presence of Mrs. Tapager, and that they signed as subscribing witnesses in Gruis' presence and in the presence of each other.
Brown was not interrogated by way of cross examination as to the apparent testamentary capacity of Gruis at the time the will was executed.
By the terms of his will, testator bequeathed his farm premises of 180 acres to Winnebago County, Iowa, for the purpose of establishing a recreational area, to be known as "Gruis Recreational Area", and to be maintained under the jurisdiction, management and control of the Winnebago County Conservation Board. He bequeathed $1000 to the Ramsey Reformed Church of Titonka, to be used for the benefit of the Church in accordance with the judgment of the officers thereof, and made a second $1000 bequest to Ramsey Reformed Church in trust for the care and maintenance of the Gruis Family graves, lots and monuments, with the direction that the said sum be invested and the interest thereon devoted to the purposes designated. He further bequested $1000 to a friend, Robert Lang, in the event Lang survived testator, and provided that in the event Land should predecease him such bequest should fail and become a part of the residue of decedent's estate. He further directed the payment of his debts, the expenses of his last illness, burial and the administration of his estate, and bequeathed and devised all of the residue to the town of Titonka for the betterment and improvement of said town according to the judgment and determination of the town council, conditioned only that the property so bequeathed and devised should not be used for the expense of the general operation of the town. He then nominated and appointed Edward Boyken of Titonka executor of his will and provided that he should be relieved from the necessity of furnishing bond.
*573 At the close of the evidence, contestants dictated into the record an offer of proof which was objected to by proponents. Proponents then dictated into the record a motion to direct verdict for the proponents and against the contestants, which was sustained. From such ruling, contestants appeal.
Plaintiffs-contestants, to justify reversal, assign as error:
(1) The trial court erred in directing a verdict against plaintiffs at the close of their evidence.
(2) The court erred in failing to allow all or parts of the proffered evidence.
(3) The court erred in not permitting plaintiffs to introduce into evidence two exhibits: the first, a letter dated May 21, 1965 directed to contestant Ben Gruis and purportedly over the signature of Bert Gruis; and the second, a list of persons to be notified in the event of the death of testator.
(4) The court erred in directing a verdict at the close of all of the evidence, including the offer of proof on the part of the contestants.
I. The burden of proof is on contestants in a will contest to establish testator at the exact time of the making of the will lacked one or more of the essentials of testamentary capacity. Where such an issue is involved, the burden is met by showing lack of mental capacity in one of the following respects:
(a) To understand the nature of the instrument then being executed.
(b) To understand and know the nature and extent of his property.
(c) To be able to identify and recall the natural objects of his bounty.
(d) To realize and know the distribution he desires to make of his property.
If the mental capacity of the testator is not equal to any of the foregoing tests, he is unable to make a valid will. In re Estate of Secrist, 186 N.W.2d 665, 667 (Iowa 1971); In re Estate of Springer, 252 Iowa 1220, 1224, 110 N.W.2d 380, 383; In re Estate of Rogers, 242 Iowa 627, 47 N.W.2d 818; Hart v. Lundby, 258 Iowa 46, 54, 137 N.W.2d 642, 647.
II. None of the witnesses for the contestants were interrogated as to the mental capacity of the testator at the exact time of the making of the will. Some of the witnesses testified to what might be termed eccentricities or foibles on the part of the testator, and we have examined in detail the offer of proof made by contestants and find nothing in the offer of proof which would tend to establish a lack of mental capacity of testator at the exact time of the execution of the instrument. While it is true that evidence of mental capacity must refer to the exact time of the making of the will, evidence of the condition of the mind of the testator at other times may be received if there is a reasonable basis for the conclusion that it throws some light on his mental competence at the time the will was made. In re Estate of Ruedy, 245 Iowa 1307, 1313, 66 N.W.2d 387, 390.
Testimony of witnesses as to departure from what they consider normal conduct and their expression of opinion of incapacity has weight only to the extent they are supported by the facts they have observed and are able to relate. Such testimony must be carefully scanned. In re Estate of Ruedy, supra, at 392 of 66 N.W. 2d.
III. In its ruling sustaining proponents' motion to direct verdict, trial court observed that even though the court had permitted all of the testimony objected to and had permitted the proffered testimony embraced in contestants' offer of proof, that the record evidence would not have established the incompetency of the testator to make a will at the time of the execution of the same. We agree with trial court's conclusion in this regard.
*574 The exhibits offered by contestants and which were excluded by the court's ruling sustaining proponents' objections thereto did not relate to the testamentary capacity of the testator at the time of the making of his will, and were of no probative force. We conclude trial court was correct in its ruling sustaining objections to their introduction.
IV. The record before us reflects no evidence even remotely connected with the testator's mental capacity at the time the will was executed. The scrivener of the will was examined, and was not even interrogated as to the mental capacity of the testator at the time of the making of the will. We find nothing in the record before us which would tend to establish a lack of testamentary capacity on the part of the testator at the time the will was executed.
We find no reversible error, and affirm the trial court.
Affirmed.