**In the Matter of the ESTATE of Pearl C. ADAMS, Deceased.**

**Lawrence EMERSON et al., Appellees,**

v.

**Geo. C. LYALL, Executor, et al., Appellants.**

**No. 2–56557.**

Supreme Court of Iowa.

Oct. 15, 1975.

John Donahey, Panora, for appellants.

Clare H. Williamson, Greenfield, and R. Y. Taylor, of Taylor, Taylor & Feilmeyer, Guthrie Center, for appellees.

Heard by MOORE, C. J., and REES, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

McCORMICK, Justice.

Proponents appeal adverse verdict and judgment in a will contest. George C. Lyall, Matilda Lyall, and Robert V. Lyall were named beneficiaries under a purported will of Pearl C. Adams, a resident of Stuart, who died November 5, 1970, at age 84, leaving an estate valued at about $190,000. The will was dated January 5, 1968. Contestants Lawrence Emerson, Marie Emerson, Margurite Hogan, Kathleen Fagan, Clarence Beaman, George Eddy, Rosa Eddy, and Congregational Church of Stuart, Iowa, were named beneficiaries under a prior will, dated April 28, 1965. None of the beneficiaries under either will was related to testator. Proponent Matilda Lyall was a half sister of her second husband. The case was submitted to the jury under alternative theories of testamentary incapacity and undue influence, and the jury returned a general verdict for contestants. Proponents challenge the resulting judgment on several grounds. We affirm the trial court and remand to permit the clerk to correct the computation of taxable court costs.

I. The principal question is whether there was sufficient evidence to submit the case to the jury on either theory of contest. We view the evidence in its light most favorable to the verdict.

In order to justify submission of a contest based on lack of testamentary capacity, the record must contain substantial evidence that at the time of execution of the will the testator lacked mental capacity in one of four respects: 1) to understand the nature of the instrument then being executed; 2) to understand and know the nature and extent of his property; 3) to be able to identify and recall the natural objects of his bounty; and 4) to realize and know the distribution he desires to make of his property. *In re Estate of Gruis*, 207 N.W.2d 571, 573 (Iowa 1973).

In this case the record contains sufficient evidence that testator lacked mental capacity to know the nature and extent of her property. Fourteen witnesses, includ-

ing close friends, neighbors, and business acquaintances of testator, expressed opinions that she lacked such capacity on the date of execution of the contested will. Their testimony contains considerable detail regarding deterioration in her mental condition commencing in 1967. According to these witnesses, she was increasingly confused and disoriented. She might drive her automobile to a gas station several times a day requesting a fill-up, reporting she had just returned from Guthrie Center or Greenfield. The tank would take as little as eight cents worth of gas. She repeatedly attempted to pay bills she had already paid. She carried a balance of more than $4000 in her checking account but would call the bank several times a day to inquire whether the balance was sufficient for her to buy groceries. She removed valuable savings bonds from her lock box and told the banker she was going to burn them because they were worthless. She did not recognize people she had known for many years, including a stepson. She did not seem to be aware of her property holdings or arrangements.

The lay opinions of her mental unsoundness were supported by medical testimony that testator suffered from cerebral arteriosclerosis which produced chronic brain syndrome, manifested in the confusion and disorientation observed by her friends and acquaintances. One doctor testified directly that a person in her condition on the date the contested will was executed would not know the nature and extent of her property.

Although this evidence was controverted, and other evidence would have supported a contrary jury finding, this evidence was substantial. It was sufficient to support submission of the lack of testamentary capacity ground to the jury.

■ Although the issue is closer, we also believe the evidence was sufficient to support submission of the undue influence ground. This ground requires proof of four elements: 1) the testator must have been susceptible to undue influence; 2) the person alleged to have exercised undue influence must have had the opportunity to exercise it; 3) such person must have had a disposition to influence the testator unduly for the purpose of procuring an improper favor; and 4) the result must clearly appear to be the effect of undue influence. *Frazier v. State Central Savings Bank*, 217 N.W.2d 238, 244 (Iowa 1974). Undue influence may be and usually is proven by circumstantial evidence. *Id.* at 243. Susceptibility to undue influence is greater in a testator with a failing mind. *In re Telsrow's Estate*, 237 Iowa 672, 677–678, 22 N.W.2d 792, 796 (1946).

■ The jury could find the proponents were not close to the testator until her mind began to fail. They were not mentioned in her 1965 will. Starting in late 1967, George and Matilda took over testator's affairs. In December 1967, when she was 81, George took her to an attorney in Guthrie Center selected by him. In George's presence, she discussed making a new will and establishing a conservatorship, but no instruments were prepared on that date.

When the attorney was ready to prepare the will and have the conservatorship papers executed, all arrangements were made through George, not testator. George sought to arrange for witnesses to the will. Two local bankers turned him down because they believed testator was not competent to make a will. On January 5, 1968, when the attorney arrived at testator's home to prepare the will, he was met at the door by George, who then left to pick up a witness. The attorney met with George after the will was executed. On the same date, George was appointed conservator of testator on her voluntary petition.

The jury could find the Lyalls are strong-willed and aggressive people. Although they contended at trial that testator's mind was sound until after a stroke in 1969, several witnesses testified the Lyalls made statements about testator's poor mental condition at the time the conservatorship

was initiated. George testified he found several uncashed checks scattered around testator's home several days before January 5, 1968. After testator's death, one witness said Matilda remarked, "It's all ours now." The jury could find George and Matilda then actively campaigned to dispel inferences regarding testator's earlier poor mental condition.

Upon the whole record, we are persuaded sufficient evidence was adduced on each element of undue influence.

Both grounds of contest were supported by substantial evidence.

II. Proponents contend the trial court erred in admitting two hospital records of testator. One related to a hospitalization in May 1969, the other to a hospitalization in November 1969. In their objections in the trial court and in their assignment of error here, proponents assert two grounds of inadmissibility, privilege and remoteness.

■ In claiming privilege, they rely upon § 622.10, The Code. However, the parties to a will contest do not have standing to assert the testator's physician-patient privilege. *Winters v. Winters,* 102 Iowa 53, 71 N.W. 184 (1897); see *Boyles v. Cora,* 232 Iowa 822, 6 N.W.2d 401 (1942); *In re Swain's Estate,* 189 Iowa 28, 174 N.W. 493 (1919).

■ In claiming remoteness, proponents rely upon the fact testator's first hospitalization was 16 months after the date of the execution of the contested will. Remoteness affects relevancy. *In re Estate of Poulos,* 229 N.W.2d 721, 726 (Iowa 1975). Here the medical records and accompanying testimony showed testator's mental deficiency was longstanding and progressive. In addition, the first hospital record contained a history obtained by the treating physician from George Lyall. According to the report, George told the doctor in May 1969 that testator had been disoriented for several years. In these circumstances, the hospital records shed light upon testator's probable mental condition on January 5, 1968. Their relevance is apparent.

The trial court did not err in overruling proponents' objections to the medical records.

III. Proponents complain of several other evidentiary rulings. They allege the court erred in receiving the April 28, 1965, will as an exhibit, in receiving the conservatorship file as an exhibit, in allowing a nurse to testify regarding her notes in a hospital record, and in refusing to permit their counsel to read George Lyall's deposition to the jury. We find no merit in any of these complaints.

■ The validity of the 1965 will was not questioned. Therefore, its admission could not confuse the issue before the jury. Moreover, the will was relevant to demonstrate contestants' standing and, on the question of undue influence, to show the Lyalls were to receive nothing under it. *In re Estate of Cory,* 169 N.W.2d 837, 843 (Iowa 1969). The trial court did not err in admitting the 1965 will into evidence.

■ Nor did the court err in receiving the conservatorship file. Documents in the conservatorship file assisted in fixing the context of events about which many of the witnesses testified. The file also showed George Lyall applied for compensation and was well paid for his services as conservator, in the face of the impression he sought to convey at trial that he did not seek pay for his services and that testator had executed the contested will from gratitude for the Lyalls' anticipated services.

■ The assertion that the court erred in receiving the nurse's testimony is also without merit. She referred while testifying to notes she had made in one of the hospital records which was in evidence. She was permitted to refer to the notes to refresh her recollection. Although proponents argue she read to the jury parts of the notes which did not refresh her recollection, no prejudice exists. The notes were in evidence as part of the hospital record.

Finally, the court did not err in refusing to allow proponents' counsel to read George Lyall's deposition to the jury. Contestants had taken the deposition before trial. Their attorney read excerpts from it during their case-in-chief. Rule 144, Rules of Civil Procedure. Proponents, with the court's permission, reserved the right to offer other parts of the deposition relevant to those excerpts. Rule 145, R.C.P. However, they waited to do so until after contestants had rested, and the court thought that was too long. In addition, they sought to offer the entire remainder of the deposition without any showing of its relevance to the excerpts read by contestants' counsel. Also, George Lyall was present and testified. He explained the excerpts from his deposition that his counsel apparently believed needed explaining. Proponents did not admit any variance between what he said in his deposition and what he said at trial.

Proponents' complaints about evidentiary rulings of the trial court are without merit.

IV. Three other matters are assigned as error. One is the alleged failure of the trial court to admonish the jury fully under rule 199(a), R.C.P., at several separations during the trial. We find the court's admonitions substantially complied with the rule and, in any event, no prejudice appears.

Next, proponents contend the court should have instructed the jury that their alleged individual out-of-court admissions were not binding on each other. No instruction was requested, and no exception was taken at trial. No error was preserved.

Third, it appears that in assessing court costs pursuant to the judgment, the clerk included items attributable to probate of testator's estate but not the will contest. As acknowledged by counsel for the contestants, only costs attributable to the will contest should have been assessed. This requires modification of the clerk's bill for costs but does not affect the judgment. The correction shall be made upon remand of the case.

No reversible error has been shown.

Affirmed and remanded.