# IN THE COURT OF APPEALS OF IOWA

No. 22-0102
Filed October 5, 2022

**IN THE MATTER OF THE RANDALL L. DURSCHMIDT REVOCABLE TRUST,**
Appellee,

**vs.**

**KRISTI LEE DURSCHMIDT,**
Appellant.
_____

Appeal from the Iowa District Court for Webster County, Jennifer Miller, Judge.

A trust beneficiary appeals the dismissal of her contest to her father's trust based on claims of a lack of testamentary capacity and undue influence. **AFFIRMED.**

Kristi Lee Durschmidt, Russell, Minnesota, self-represented appellant.

Brian L. Yung and Nicholas K. Cochrane of Johnson, Mulholland, Cochrane, Cochrane, Yung & Engler, PLC, Fort Dodge, for appellee.

Considered by Tabor, P.J., and Greer and Chicchelly, JJ.

**GREER, Judge.**

After her father passed, a will contest, turned trust dispute, brought to focus a daughter's claim against her relatives. Without proof of a lack of testamentary capacity or undue influence over the father, Randall Durschmidt, the case lacked a basis to change the estate plan. But it all began when Randall created the Randall L. Durschmidt Revocable Trust (the Trust) in January of 1999. In his will, signed in 2017, he directed the residue of his estate should go to the trust. The trust agreement was rewritten three times; the third restatement of the Trust was signed on November 13, 2019, with Randall as trustee. The document devised forty percent of the trust estate's residue to Randall's sister, Marnell Nordstrom, and twenty-five percent each to his eldest and youngest daughter, Lynn Niemeyer and Lisa Corrigan, respectively; the final ten percent was to go into a trust for the benefit of his middle daughter, Kristi Durschmidt.[1] He also had an individual retirement account (IRA), which Kristi said was distributed between one of her sisters and Randall's church.

In September 2020, Randall named his sister, Nordstrom, to serve as co-trustee with him. In the same document, Randall appointed his youngest daughter, Corrigan, as his successor trustee. Randall passed away at ninety years old that December.

In May of 2021, after Randall's will was admitted to probate, Kristi filed a petition contesting the will. On August 25, 2021, Nordstrom moved to terminate the estate trust. The district court determined that Kristi's challenge was actually

---

[1] Because they share a last name, we refer to Randall and Kristi by their first names.

to the trust, not the will, and consolidated her will challenge into the case to terminate the trust. Included in that order was a directive that in the next thirty days Kristi file "a clear and concise statement relative to all of [Kristi's] objections to the termination of the trust in a numbered orderly fashion." No statement was filed.[2]

A bench trial was held on December 7. Agreeing with the parties that the core of the case involved a trust, the district court refined Kristi's claim to four main assertions: (1) Randall lacked testamentary capacity at the time he changed the trust distributions in 2019, (2) Nordstrom and Corrigan had exerted undue influence on Randall, (3) the IRA distribution should be set aside, and (4) her share should be distributed directly to her rather than through the Kristi Durschmidt Trust. Assuming the court revoked the 2019 trust document, Kristi contended both that the original trust document from 1999 should be honored[3] and that the trust assets should be immediately split evenly between Randall's three daughters. The district court denied Kristi's petition on all four grounds.

**I. Analysis.**

First, Kristi's challenge to set aside the trust is an action triable in the probate court as an action at law, so our review is for errors at law. *See* Iowa Code §§ 633.311, 633A.3101 (2021); *see also In re Ronald R. Oldham Tr.*, 889 N.W.2d

---

[2] Kristi addressed the lack of a statement at the trial, contending that three of her filings—"Petition Contesting Will," "Addition/Addendum to My Petition Contesting Distribution of Will" and "Petition Contesting Will & Trust of Randall Durschmidt"—laid out her objections.

[3] Kristi did not submit a copy of the original 1999 trust document into evidence. Kristi described the terms as requiring an equal distribution between the sisters with incremental payments over five, ten, and fifteen years.

671, 672–73 (Iowa Ct. App. 2016). Kristi raises the same four concerns she had before. But, she does not provide any legal authority regarding the IRA or the Kristi Durschmidt Trust; insofar as these arguments diverge from Randall's testamentary capacity or allegations of undue influence, we consider them waived. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *see also Goodwin v. Iowa Dist. Ct.*, 936 N.W.2d 634, 643 n.2 (Iowa 2019) ("It is not our role to rewrite a pro se pleading, nor can we act as the advocate for a pro se litigant."). In her appellate brief, she also discusses a number of issues that were not raised and ruled upon by the district court, and we will also not address these extraneous issues that were not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."); *see also In re Est. of DeTar*, 572 N.W.2d 178, 180 (Iowa Ct. App. 1997) ("Iowa law dictates that [a pro se party's] brief is judged by the same standard as a brief filed by an Iowa lawyer.").

A. Randall's Testamentary Capacity.

In a will contest, "[t]he burden of proof is on contestants . . . to establish testator at the exact time of the making of the will lacked one or more of the essentials of testamentary capacity." *Est. of Gruis v. Winnebago Cnty.*, 207 N.W.2d 571, 573 (Iowa 1973). In deciding the contest of a revocable trust, the same analysis should be applied.[4] *See In re Guardianship of Driesen*, No. 08-

---

[4] "Settlor must be competent as required to execute a will to modify the terms of a revocable trust. Thus, a beneficiary may challenge an amendment based upon

1311, 2009 WL 1491871, at *3 (Iowa Ct. App. May 29, 2009) (confirming the test for capacity to amend a trust follows the test defining testamentary capacity to make a will); *see also In re Guardianship of Radda*, 955 N.W.2d 203, 214 n.9 (Iowa 2021) (stating that like a will contest, challenges to a revocable trust must be brought after the death of the testator). The test to assess testamentary capacity requires evaluating whether the person executing the document lacks any of the following abilities:

> (a) To understand the nature of the instrument then being executed.
> (b) To understand and know the nature and extent of his property.
> (c) To be able to identify and recall the natural objects of his bounty.
> (d) To realize and know the distribution he desires to make of his property.

*Id.*; *In re Est. of Henrich*, 389 N.W.2d 78, 81 (Iowa Ct. App. 1986).

Focused on Randall's mental condition in 2020, Kristi argues the attorneys who drafted her father's documents should have tested Randall's mental capacity, which they never did. But, as the party holding the burden, Kristi has been unable to prove her father would have failed any of the aforementioned tests. Even when she called her father's physician to testify on her behalf, the doctor said he had no concerns about Randall's cognitive abilities; as an example, he testified that at appointments Randall "could recite his medication list clearly without any mistakes. He came fully prepared [to each appointment]." Even more compelling, the doctor testified "I had never at any point thought that [Randall] was having issues with his

---

settlor's lack of testamentary capacity." 13 Julia L. Pulkrabek & Gary J. Schmit, *Iowa Practice Series: Probate* § 12:69 (Oct. 2021 update).

cognition." And, as the Trust pointed out, the only change to the trust documents in 2020 related to appointing a co-trustee and updating the successor trustee, not the distribution plan. Kristi offered no evidence of any mental acuity issues prior to 2020.

As for Randall's condition in 2020, Kristi's limited evidence involves speculation over Randall's wobbly signature on the paperwork appointing his co-trustee, his medical conditions,[5] and the percentage of seniors expected to die from mental-impairment illnesses this year—neither of which establish Randall lacked testamentary capacity in 2019 when he changed the distributions of his trust. *See In re Ransom's Est.*, 57 N.W.2d 89, 109 (Iowa 1953) ("This court has many times held that old age and the physical and mental impairment that are its normal accompaniments, bodily infirmities, the waning of the physical or mental alertness of earlier years, weakening of the memory, forgetfulness, the failure to immediately recognize old acquaintances, impairment of the sight or hearing, repetitious narrative, carelessness in dress, childishness or other eccentricities, will not invalidate the will of a person, if he has mentality and intelligence sufficient to bring himself within the requisites of testamentary capacity hereinbefore stated."); *In re Est. of Boman,* No. 16-0110, 2017 WL 512493, at *9 (Iowa Ct. App. Feb. 8, 2017) (declining to deem a testator lacked capacity even with "mounting forgetfulness and [a] dementia diagnosis"). Finally, Nordstrom testified her brother

---

[5] Randall's physician testified that none of Randall's health conditions would impair his cognitive abilities and that nothing related to his heart condition would have affected his ability to understand legal documents. One medical report from September 2020 was admitted as an exhibit, and the only note concerning mental status was "he was alert."

fully knew "to the penny" what he owned and had all of his affairs organized in "books underneath his coffee table." Unable to overcome this hurdle of proof, Kristi's challenge must fail.

B. Undue Influence.

Kristi next alleges that Nordstrom and Corrigan exerted undue influence against Randall. Again, using a will contest as a guide, there are four elements necessary to prove undue influence, namely:

> (1) the testator was susceptible to undue influence; (2) defendants had an opportunity to exercise undue influence and effect the wrongful purpose; (3) defendants had a disposition to influence unduly to procure an improper favor; and (4) the result, reflected in the will, was clearly the effect of undue influence.

*In re Est. of Bayer*, 574 N.W.2d 667, 671 (Iowa 1998). Kristi must prove the first three elements of undue influence by a preponderance of the evidence. *See Burkhalter v. Burkhalter*, 841 N.W.2d 93, 104–05 (Iowa 2013) (applying this standard in a dispute over testamentary capacity and undue influence involving a distribution plan under a trust). The fourth element, causation, requires a heightened clear-proof standard which "ensures the other factors really mattered to the end result." *Id.*; *see also In re Est. of Davenport*, 346 N.W.2d 530, 532 (Iowa 1984) ("It is not sufficient that persuasion alone was asserted against the testator. The courts have rightly recognized that most persons assert some influence over others, through friendship or familial duties, which may have some tangential effect on their receiving a testamentary benefit. This influence is not tainted. Rather, undue influence must dominate the motives of the testator in executing his will. It must be equivalent to 'moral coercion.'" (citation omitted)). To summarize:

> The injection of the word "clearly" into the fourth element of undue influence is designed to add a measure of protection to the free will of a testator, filter out claims that are unduly speculative, and to prevent the doctrine from expanding beyond its limited scope. All of the other elements of undue influence might be present— susceptibility, opportunity, and disposition—and, still, the will provisions might be the result of the testator's free will.

*Burkhalter*, 841 N.W.2d at 105–06.

Again, Kristi points to Randall's health conditions to establish his diminishing capacity and susceptibility to undue influence, as well as stating that Nordstrom and Corrigan "assumed a position of dominance over [Randall]." As the district court put it, Kristi can provide only "suspicion and surmise" to back her claim. *See In re Will of Pritchard*, 443 N.W.2d 95, 98 (Iowa Ct. App. 1989) ("Mere suspicion, surmise, conjecture, or speculation is not enough to warrant a finding of undue influence, but there must be a solid foundation of established facts upon which to rest an inference of its existence."). As we have already established, the evidence in the record refutes any meaningful decline in Randall's competence that would make him susceptible to undue influence. *See Est. of Arnold v. Arnold*, No. 18-1460, 2019 WL 3317381, at *3 (Iowa Ct. App. July 24, 2019) ("[The plaintiff] lists [the decedent's] various health issues and the help [the decedent] received from family members in his later years. But those natural circumstances of aging do not show [the decedent] was so 'infirm or mentally weak' that he would be susceptible to undue influence.").

Likewise, we note that Nordstrom testified she never attended any estate planning meetings involving the changes to the trust terms. Even assuming Nordstrom and Corrigan had the opportunity to influence Randall at the time of the trust's third restatement, Kristi can only accuse the two of having a disposition to

do so. No facts of their actions to influence appear in this record. And, given the higher standard necessary to prove the fourth element, Kristi has not shown there was a "continuing and persistent effort to unduly influence the testator which destroys the testator's free will." *See Davenport*, 346 N.W.2d at 532; *see also Burkhalter*, 841 N.W,2d at 107 (applying this component of proof to a trust dispute). So, without more than a scintilla of evidence of undue influence, we will not disturb the distribution on such grounds.

## II. Conclusion.

Because Kristi has not proved Randall lacked testamentary capacity or was unduly influenced, and has either waived or failed to preserve error on her other issues, we affirm the district court.

**AFFIRMED.**