IN RE ESTATE OF FLORENCE E. RAMSEY.

JEANNE PASCHAL, appellee, v. CLELL M. WAUDBY, appellant.

No. 50114.

(Reported in 105 N.W.2d 657)

OCTOBER 18, 1960.

James B. Smith, of Perry, and Hammer, Matthias & Tyler, of Newton, for appellant.

Brierly, McCall & Girdner, of Newton, for appellee.

THOMPSON, J.—Florence E. Ramsey, the testatrix whose will is questioned in this litigation, died on April 9, 1959. She had been for many years and was at the time of her death a resident of Newton, in Jasper County. On April 10, 1959, the last will and testament under attack was filed for probate in the office of the clerk of the Jasper District Court. Apparently the will was filed by the proponent, Clell M. Waudby, and had been in his possession since it was executed on November 22, 1958; at least the record permits that inference. It is undisputed that the will was signed at the home of Waudby, in Perry, Iowa; he admits in his reply to objections that he wrote it, at least in the sense that he acted as the scrivener by typing it; the witnesses were his sister Gleo Berthouex and her husband, George Berthouex, who were present in Waudby's home at the time. The testatrix came to Waudby's home on the day the will was executed accompanied by Waudby. The will left to Waudby about $25,000 in securities, while the entire value of the estate is in the neighborhood of $52,000. The testatrix was a spinster with no close relatives; but the contestant, Jeanne Paschal, is a second cousin, and there also survived her a ma-

ternal aunt, four maternal cousins and four second cousins, including the contestant. Testatrix' relations with these relatives were friendly and, at least with the contestant, reasonably close. Testatrix was 65 years of age at the time of her death.

There is substantial evidence that Miss Ramsey was a person who found it difficult to make up her mind and disliked to make decisions. She had been engaged in business at one time for herself, but apparently most of her active life as an employee. At the time of her death she was an employee of the Globe Loan Company in Newton. The proponent, Waudby, had established this office in 1943, when he was general manager of the company. At that time the testatrix was operating the Newton Credit Bureau, which she owned. Waudby became acquainted with her and employed her as manager of the Newton office of the Globe. He supervised the office from 1943 to 1947. For some time before her death the testatrix was not the manager of the Globe office in Newton, but was employed there. Waudby denied his possession of the will after it was drawn, saying the next time he saw it after it was executed was at testatrix' home in Newton, about one week before her death; but there is evidence from which a contradictory inference may be drawn. Apparently the testatrix was a frugal and thrifty person and had accumulated the estate which she left by her own work and saving. Except for the evidence she did not like to accept responsibility there is no showing of mental weakness or incapacity. Other facts shown by substantial evidence will be referred to in the discussion following.

I.   The proponent assigns only one error relied upon for reversal: that the court erred in refusing to direct a verdict in his favor. Questions of admissibility of evidence, correctness of instructions and any other possible grounds for reversal are therefore not before us. The objections to the admissibility of Paragraphs 16, 18 and 19, which dealt with the proponent's interest and powers under the will, are based on allegations of undue influence exercised by the proponent so that the offered paragraphs are not the true will of the testatrix but rather of the proponent. So the sole question before us is whether the record shows a jury question upon this issue. It is not for us

to decide whether the decedent was subjected to undue influence which controlled her will. The proponent may have been as innocent of any wrongdoing as the clients of a certain famous television defense counsel invariably prove to be; but the jury did not think so, and we must agree the matter was properly submitted to it for its determination of the facts.

II.   These matters are shown by substantial evidence, which we must take in the aspect most favorable to contestants which it will fairly bear: 1, the testatrix came to proponent's home with the proponent; 2, the will was drawn, or at least typed by the proponent; 3, it was witnessed by proponent's sister and her husband; 4, it left approximately one half of testatrix' estate to proponent, who was not related to the decedent; 5, for some time past the proponent had been attorney-in-fact for testatrix, it appearing that two successive instruments giving him this status had been executed, one of which was still in effect; 6, there is an inference that the will remained in the possession of the proponent after its execution; 7, in May of 1958, about six months before the date of the will in question here, testatrix had executed another will, drawn by her attorney in Newton, in which the proponent was not named as a beneficiary.

These things leave little room for argument as to whether a jury question was engendered. The contestant had the burden to prove undue influence. But undue influence is ordinarily not exercised in the public view. It is in the nature of this form of chicanery that it is attempted by stealth; and it is only rarely that direct evidence of its operation is available. The courts have often held that it is provable by circumstantial evidence. In re Estate of Farlow, 243 Iowa 15, 16, 50 N.W.2d 561, and citations. We have in the case at bar substantial evidence that the will was prepared by the proponent; that he had opportunity to influence the testatrix; that a relationship of attorney-in-fact existed; that the witnesses were the sister and brother-in-law of the proponent; that he received substantially one half of the estate, although not related; and that he retained possession of the will until the death of the decedent. Whether or not any of these things standing alone would be

sufficient to raise a fair inference of undue influence they add to an impressive total, ample to require the determination of the jury.

In Ward v. Sears, 247 Iowa 1231, 1242, 78 N.W.2d 545, 551, we quoted with approval from 57 Am. Jur., Wills, section 389, pages 279, 280: "It is generally accepted that the mere existence of confidential relations between a testator and a beneficiary under his will does not raise a presumption that the beneficiary has exercised undue influence over the testator. Such consequence follows a confidential relationship between the testator and the beneficiary only where the beneficiary has been actively concerned in some way with the preparation or execution of the will, or where the relationship is coupled with some suspicious circumstance, such as mental infirmity of the testator or unfairness in the will."

To the same effect is 95 C. J. S., Wills, section 463, page 448.

Graham v. Courtright, 180 Iowa 394, 161 N.W. 774, contains much pertinent language applicable to the situation before us. It is there said, at page 407 of 180 Iowa, page 778 of 161 N.W.: "All that can be said is that the existence of a confidential relation, such as that of guardian and ward, attorney and client, religious adviser and layman, and the like, affords peculiar opportunities for unduly exercising influence over the mind; and, where the dominant party in such relation initiates the preparation of the will, or gives directions as to its contents to the scrivener, or writes it himself,—in other words, is active either in its preparation or execution, and is made a beneficiary thereunder,—a suspicion arises that the benefaction may have resulted from the exertion of undue influence over the testator, rather than from his free volition."

1 Underhill on Wills, section 137, is quoted in the Graham case (page 410) with approval: "No presumption of undue influence invariably arises from the fact that a will is drawn by a beneficiary under it, which is sufficient to cast the burden of showing the absence of influence upon the proponent. It is a fact to be considered with other facts. It is undoubtedly a suspicious fact, but its weight depends, not solely upon its charac-

ter, but upon the facts and circumstances with which it is connected."

Olsen v. Corporation of New Melleray, 245 Iowa 407, 60 N.W.2d 832, is an instructive case upon the points before us in the case at bar. There the will, which left the greater part of testator's estate to the defendant, a religious and charitable society, had been prepared by testator's attorney, who was also a director of and attorney for the beneficiary-corporation. We held there was a jury question on the issue of undue influence, saying at page 414 of 245 Iowa, page 837 of 60 N.W.2d: "At best, such wills are certainly not looked upon with favor, and the court should cautiously and carefully examine into the circumstances which were attendant upon its execution." See also In re Estate of Ankeny, 238 Iowa 754, 28 N.W.2d 414.

The execution of a previous will some six months before the one under examination which was markedly different in the testatrix' disposition of her property in that it made no provision whatever for the proponent is a fact to be considered with all other matters in evidence. In Johnson v. Johnson, 134 Iowa 33, 35, 111 N.W. 430, 431, we said: "That the last will differed from the one previously executed was not evidence of undue influence. * * * But where there is evidence that undue influence has been exercised such differences are proper for consideration, as tending to show that it has been effective on the mind of the deceased."

The case before us presents a stronger showing of undue influence than any of those above cited. We have summarized the evidence. It leads conclusively to a holding of the correctness of the trial court's rulings of which the proponent complains. There was clearly a jury question on the issue submitted. —Affirmed.

All JUSTICES concur.