Edith Louise BOEHM and Duane F. Allen, Appellees,

v.

Mary E. ALLEN, Executor of the Estate of Duane R. Allen, Deceased, Appellant.

No. 92–698.

Court of Appeals of Iowa.

June 29, 1993.

Robert D. Fulton of Fulton, Frerichs, Martin & Andres, P.C., Waterloo, for appellant.

Edward J. Gallagher, Jr. and Cynthia A. Scherrman of Gallagher, Langlas & Gallagher, Waterloo, for appellee.

Heard by SCHLEGEL, P.J., and HAYDEN and HABHAB, JJ.

HABHAB, Justice.

Mary E. Allen, the decedent's wife and executor of his estate, appeals from a judgment of the district court, following a jury trial, setting aside the decedent's May 1980 will on the grounds of undue influence.

The decedent, Duane Allen, was married for twenty-eight years to Belva Allen until her death in 1970. Belva and Duane had two children, Fred and Edith ("Louise") Boehm. During this marriage, Duane and Belva acquired a 120–acre farm on the outskirts of Cedar Falls, which Duane acquired free and clear in 1973 (hereafter "Black Hawk County farm"). Early in the 1970's, Duane inherited a farm in Lucas County from his father.

Following Belva's death, Duane's life-style began to change. In September 1972, Duane met the defendant, Mary Allen, who was a barber at a hotel frequented by Duane. In October 1972, Mary moved to Duane's farm with her two children from a previous marriage. On November 10, 1972, Duane and Mary were married. At the time of the

marriage, Mary had little property and had a mortgage on her car and barbershop.

In 1975, Duane drafted a will leaving 40 acres of his Black Hawk County farm and all his personal belongings to Mary, with the rest and residue to his two children, Fred and Louise Boehm. This included the remaining eighty acres of the Black Hawk County farm plus the Lucas County farm Duane inherited from his father. In 1976, Duane executed a new will, based on his sale on contract of the Lucas County farm. The 1976 will carried out all the provisions of the 1975 will, except that Duane left his interest in the real estate contract to his children rather than the real estate.

In 1979, Duane retired as a bricklayer. Duane had been suffering from arthritis since his early years, and it was severe enough that he was eligible to receive Social Security benefits.

On January 29, 1980, Duane and Mary went to Robert Dieter, an attorney, regarding information for the drafting of the wills. According to Dieter's notes, Duane discussed the possibility of leaving all of the Black Hawk County property to Mary for her life, with the remainder to his children in equal shares. The notes on Mary's proposed will indicated that she wished to set up a trust for the benefit of her children with some mineral rights she had inherited constituting the corpus of the trust, and the rest going to Duane. These wills were never executed.

On March 20, 1980, Mary made an appointment to see Dieter regarding the drafting of their wills. According to Dieter, Mary appeared at the meeting alone, and indicated that she and Duane wanted simple wills leaving their entire estate to each other and the balance to each of their respective children. On May 7, 1980, an appointment was made for the execution of the wills. Dieter testified that because of the facts regarding the preparation of the wills, he was particularly careful in determining that Duane understood the nature of his wills and their legal consequences. Dieter testified that Duane repeatedly noted that the new will was the way he wanted his property to be distributed. The wills were subsequently executed.

In July 1981, Mary and Fred (Duane's son) committed Duane due to his severe alcoholism. According to the emergency room medical record, Mary stated that the alcohol abuse had been ongoing for two years. Fred testified that the problem had been ongoing since the late 1970s, but that his father had been skilled in masking his alcohol intake such that his own family did not always know he had been drinking. Fred and his sister, Louise, and their spouses testified to specific examples of conversations with Duane, which later Duane could not remember due to his drinking.

Duane died on October 20, 1989. Fred and Louise received nothing under the will, since the Lucas County farm contract had already been paid up. Several days after Duane's death, Mary allegedly told Fred and Louise that she had made a promise to Duane, and that she would carry it out only if they did not cause any trouble. Mary did not reveal this promise until after the present litigation had commenced. According to the terms of the promise, the survivor of Duane and Mary was to divide the remaining property equally between the four children at the survivor's death.

After the filing of the present action by Duane's two children, Mary purchased two certificates of deposit in equal amounts of $25,000, with each of her sons' names as a joint owner with her. In 1991, Mary had her will changed, leaving all of her property to her two sons, leaving nothing to Fred and Louise.

Fred and Louise filed the present action on March 5, 1990, seeking to set aside the 1980 will on the ground of undue influence. On July 17, 1991, Mary filed a motion for summary judgment, which was denied by the district court. The case proceeded to trial on August 28, 1991. Following trial, the jury returned a verdict finding that the 1980 will was signed as a result of undue influence. The district court accordingly ordered the 1980 will be set aside. Mary subsequently filed a motion for judgment notwithstanding the verdict and motion for new trial, which the district court denied. Mary has appealed.

### I. *Sufficiency of Evidence.*

Mary first argues there was insufficient evidence to show that she had undue influence on Duane in drafting the 1980 will and therefore the district court erred in overruling her motion for summary judgment, motion for directed verdict, motion for judgment notwithstanding the verdict and motion for a new trial.

The motions challenge the sufficiency of the evidence to generate a jury question. In determining whether a jury question was engendered when a party seeks a directed verdict, summary judgment, or judgment notwithstanding the verdict, the trial court views the evidence in the light most favorable to the non-moving party regardless of whether such evidence is contradicted. *Matter of Will of Pritchard,* 443 N.W.2d 95, 97 (Iowa App.1989). This court views the evidence in the same way. *Id.* If reasonable minds could differ on the issue, it was properly submitted to the jury. *Id.* Evidence is not insubstantial merely because it could support contrary inferences. *Grinnell Mut. Reins. Co. v. Voeltz,* 431 N.W.2d 783, 785 (Iowa 1988) (citation omitted).

Motions for a new trial can be granted pursuant to Iowa Rule of Civil Procedure 244(f) if a jury verdict is not supported by sufficient evidence. *Houvenagle v. Wright,* 340 N.W.2d 783, 785 (Iowa App.1983) The trial court has broad discretion in passing on motions for new trials, and it is only when there is a clear abuse of that discretion that we will interfere with the denial of such motion. *Id.* A court has no right to set aside a verdict just because it might have reached a different conclusion. *Id.*

Our question is whether there was substantial evidence to support the jury's finding of undue influence. If we find substantial evidence, all four of Mary's motions will fail.

Undue influence must be such as to substitute the will of the person exercising the influence for that of the testator, thereby making the writing express, not the purpose and intent of the testator, but that of the person exercising the influence. It must operate at the very time the will is executed and must be the dominating factor.

*In re Estate of Davenport,* 346 N.W.2d 530, 532 (Iowa 1984) (citing *In re Estate of Roberts,* 258 Iowa 880, 888, 140 N.W.2d 725, 730 (1966)). In order to establish undue influence, the following elements must be established:

(1) Susceptibility to undue influence,

(2) Opportunity to exercise such influence and effect the wrongful purpose,

(3) Disposition to influence unduly for the purpose of procuring an improper favor, and

(4) Result clearly the effect of undue influence.

*Davenport,* 346 N.W.2d at 532.

Undue influence is usually "established by circumstantial evidence and may be and often is based upon a cumulation of many factors." *In re Dashiell's Estate,* 250 Iowa 401, 406, 94 N.W.2d 111, 114 (1959). Unnatural, unjust, or unreasonable distributions are proper considerations. *In re Estate of Herm,* 284 N.W.2d 191, 201 (Iowa 1979). One who is infirm and mentally weak is more susceptible to influence than one who is not. *Id.; see also Davenport,* 346 N.W.2d at 532 (citing 1 S. Kurtz, *Kurtz on Iowa Estates,* § 4.45 at 175 (1981)).

Fred and Louise presented testimony that at the time the will was executed, Duane suffered a debilitating and painful arthritic condition, rheumatoid spondylitis. The condition was so severe that Duane was actually stooped over to the point of being unable to lay flat. In addition, there was overwhelming evidence that Duane had a very severe problem with alcohol abuse. The jury could have found that the combination of constant pain and the alcoholism made Duane susceptible to undue influence.

Mary had the opportunity to exercise such influence. In addition to the opportunity that the marriage and living with Duane presented to her, the attorney who drafted the wills, Bob Dieter, testified that Mary came to his office alone to request the changes in Duane's will. Dieter never had any conversations with Duane alone regard-

ing the changes in his will. Mary was in the room when the will was executed.

There is also substantial evidence that Mary had a disposition to influence unduly. The will was drafted under unusual circumstances. In addition, there was testimony from witnesses about statements Mary had allegedly made that she would use alcohol to make Duane behave and that she stayed in the marriage because of the money. There was also evidence that Duane believed his will left his children the Black Hawk County farm. Anna Mae White testified that as late as 1987 Duane informed her that his will left the Black Hawk County farm to his children, subject to a life estate to Mary. Fred and Louise also testified that Duane told them the same thing on several occasions.

We also find that from the evidence presented, the jury could find the final element was met. Several witnesses testified to the close relationship decedent had with his children. In addition, the will prepared in January 1980, which was never executed, gave Mary a life estate in the Black Hawk County farm and upon her death the farm would go to Fred and Louise. Under the will executed in May of 1980, the decedent's children received no interest in the Black Hawk County farm.

After reviewing the record, in light of the applicable law, we find substantial evidence to support the jury's findings of undue influence. The court did not err in declaring the purported will void.

## II. Jury Instruction 9A.

Mary also argues that the district court erred in giving Instruction 9A to the jury. Instruction 9A stated:

If you determine that the Will executed by Duane R. Allen on May 7, 1980 is invalid, his prior Will, executed on December 14, 1976, will be offered for probate.

Mary does not dispute that this instruction is a correct statement of the law. She maintains that this instruction allowed the jury to consider whether or not they agreed with the disposition of property as contained in the 1976 will as compared to the disposition of the 1980 will.

An error in giving or refusing to give an instruction is not reversible unless the error was prejudicial. *Stover v. Lakeland Square Owners Ass'n*, 434 N.W.2d 866, 868 (Iowa 1989).

Jurors are given the credit of honest purpose to dispose of questions submitted to them upon the evidence under the instructions given by the court. *Jones v. Iowa State Highway Comm'n*, 185 N.W.2d 746, 751 (Iowa 1971). It is assumed the jury at all times heeded and complied with the instructions so given. *Id.*

We find nothing in the record to challenge that assumption. We see no evidence the jury ignored the court's instructions and substituted its own view of the proper disposition of the testator's property for that of the testator. We conclude the appellant suffered no prejudice concerning the challenged instruction.

## III. Certificates of Deposit and Mary's Subsequent Will.

Mary next maintains the district court erred in admitting into evidence certificates of deposit purchased in 1991 by Mary, naming her two sons as joint owners with her. Mary also argues that the district court erred in allowing into evidence testimony that she had changed her will subsequent to Duane's death. Mary claims her actions after Duane's death lacked any probative value.

We review evidentiary rulings for an abuse of discretion. *Harrison v. Ulicki*, 193 N.W.2d 533, 536 (Iowa 1972). In order to show an abuse of discretion, one generally must show that the court exercised its discretion " 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.' " *State v. Blackwell*, 238 N.W.2d 131, 138 (Iowa 1976) (quoting *Weeks v. Burnor*, 132 Vt. 603, 326 A.2d 138, 140 (1974)).

The basic tenet of relevancy is whether or not the evidence offered would have any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Iowa

R.Evid. 401. The district court found the certificates of deposit were relevant to the alleged financial arrangement between Duane and Mary regarding Mary's inheritance of the Black Hawk County farm. The district court found the contents of Mary's will showed her motive and disposition regarding decedent's property.

We find the district court did not abuse its discretion in ruling this evidence was admissible.

We affirm the trial court in all respects, and affirm the jury verdict setting aside decedent's May 1980 will on the grounds it was unduly influenced.

**AFFIRMED.**