# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-1420
Filed June 10, 2026

————————————

**In the Matter of the Estate of Bessie F. Langer, Deceased.**

**Debra Buck,**
Appellant,

v.

**Rhonda Mock, Individually and as Co-Executor of the Estate of
Bessie F. Langer,**
Appellee.

————————————

Appeal from the Iowa District Court for Shelby County,
The Honorable Richard H. Davidson, Judge.

————————————

**AFFIRMED**

————————————

Nathan J. Schroeder (argued) of JSC Legal, PLC, Cedar Falls, attorney for
appellant.

Jordan T. Glaser (argued) and Brody D. Swanson of Peters Law Firm, P.C.,
Council Bluffs, attorneys for appellee.

————————————

Heard at oral argument
by Ahlers, P.J., and Buller and Langholz, JJ.
Opinion by Ahlers, P.J.

1

**AHLERS, Presiding Judge.**

Bessie Langer died at the age of 105. She had no children. Her will, executed two years before her death, left the residue of her estate equally to eight people—a friend, six nieces and nephews, and a grandniece. Debra Buck, one of Langer's nieces who had been named as a beneficiary in a prior will, was excluded from the will. Buck challenged the will, claiming it should be set aside because Rhonda Mock, a niece named as a beneficiary in the will, unduly influenced Langer to execute the will and intentionally interfered with Buck's inheritance. Mock moved for summary judgment on both claims, and the district court granted her motion. On appeal, Buck claims the court erred by concluding that she failed to raise a genuine issue of material fact as to both claims.

## I.      Standard of Review and Summary Judgment Standard

We review orders granting summary judgment for correction of errors at law. *Hedlund v. State*, 930 N.W.2d 707, 715 (Iowa 2019); Iowa R. App. P. 6.907. Summary judgment is appropriate "when the record shows no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Hedlund*, 930 N.W.2d at 715. Summary judgment is not appropriate if the facts support different inferences and therefore different conclusions. *Id.* When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party including all legitimate inferences that can be deduced from it. *Id.* The nonmoving party must present competent evidence showing a genuine issue of material fact; speculation and allegations are not sufficient. *In re Est. of Franken*, 944 N.W.2d 853, 858 (Iowa 2020).

On appeal, Buck claims the district court erred in granting summary judgment on her undue-influence and intentional-interference-with-

inheritance claims because she presented sufficient evidence to raise a genuine issue of material fact as to each element of those claims. Buck also claims a confidential relationship existed between Mock and Langer.

## II.      Undue Influence

Undue influence occurs when there is a substitution of

the will of the person exercising the influence for that of the testator, thereby making the writing express, not the purpose and intent of the testator, but that of the person exercising the influence. It must operate at the very time the will is executed and must be the dominating factor.

*In re Est. of Bayer*, 574 N.W.2d 667, 671 (Iowa 1998) (quoting *In re Est. of Davenport*, 346 N.W.2d 530, 531–32 (Iowa 1984)).

To establish undue influence, Buck must prove all of the following elements: (1) Langer was susceptible to undue influence; (2) Mock had the opportunity to exercise such influence and effect the wrongful purpose; (3) Mock had a disposition to influence Langer unduly for the purpose of procuring an improper favor; and (4) the result reflected in the will is clearly the effect of undue influence. *See id.* These elements can be proved by circumstantial evidence. *Id.* "Mere suspicion, surmise, conjecture, or speculation is not enough to warrant a finding of undue influence, but there must be a solid foundation of established facts upon which to rest an inference of its existence." *Id.* (emphasis omitted) (quoting *In re Will of Pritchard*, 443 N.W.2d 95, 98 (Iowa Ct. App. 1989)).

### A.      Susceptibility

Buck claims there was a genuine issue of material fact regarding Langer's susceptibility to undue influence. She contends that Langer's

3

physical health was deteriorating, she had an instance of delirium, and she increasingly relied on others to care for her because of her declining health. *See Boehm v. Allen*, 506 N.W.2d 781, 784 (Iowa Ct. App. 1993) ("One who is infirm and mentally weak is more susceptible to influence than one who is not.").

Following our review of the record, we agree with these conclusions reached by the district court:

> The court acknowledges that [Langer]'s medical records do list a number of conditions and there is no dispute that [Langer] had mobility issues in her later years requiring assistance. However, there is nothing that would indicate [Langer] was "mentally weak." In fact, the record indicates that [Langer] remained sharp throughout her life with multiple witnesses commenting on this fact. [Buck] references [Langer]'s episode with delirium, but this occurred after the will's execution, resolved a week later, and there is no evidence it was reflective of [Langer]'s mental state any other time. As [Langer] aged[,] she became more reliant upon others for matters outside the home such as transportation[,] but the record includes little evidence that [Langer] was susceptible to undue influence.

Langer's litany of health problems can be attributed to her advanced age, but they do not establish a susceptibility to undue influence. *In re Est. of Khabbaz*, No. 23-0495, 2024 WL 3684812, at *5 (Iowa Ct. App. Aug. 7, 2024) ("The natural circumstances of aging do not show a testator is 'infirm or mentally weak,' so as to be more susceptible to undue influence."). The record shows that, despite her age and physical infirmities, Langer lived independently until two years after the challenged will was executed.

Additionally, evidence of Langer's mental weakness is scant. Buck argues her episode of delirium four months after the will was executed could indicate preexisting mental issues which could have made her susceptible at the time the will was executed, but she cites no evidence supporting this contention. Without some evidence to support her contention, it amounts to

speculation and does not raise a genuine issue of material fact as to Langer's susceptibility to undue influence. *See Franken*, 944 N.W.2d at 858 (finding that speculation is not enough to generate a genuine issue of material fact).

The increased assistance Mock provider Langer in her later years with things like driving her to appointments and picking up groceries for her are not sufficient to create a genuine issue of material fact regarding Langer's susceptibility to undue influence. *Contrast In re Est. of Masterhan*, No. 00-2064, 2002 WL 31640607, at *1–2 (Iowa Ct. App. Nov. 25, 2002) (concluding the testator was susceptible to undue influence in part because of his complete physical dependence on his caretaker for "virtually all his daily needs"), *with Est. of Arnold v. Arnold*, No. 18-1460, 2019 WL 3317381, at *3 (Iowa Ct. App. July 24, 2019) (concluding a testator's various health issues and the help he received from family members in later years were natural circumstances of aging that did not show the testator was susceptible to undue influence). Even when the circumstances are viewed in their totality and in the light most favorable to Buck, no reasonable fact finder could conclude Langer's declining physical health, single episode of delirium, and dependence on others for certain chores made her susceptible to undue influence. There is therefore no genuine issue of material fact as to this element, and the district court did not err in so ruling. Because we find no genuine issue of material fact as to Langer's susceptibility to undue influence, Buck has failed to establish the first element of undue influence, so we need not address the other elements. *See Bayer*, 574 N.W.2d at 671 ("The party contesting a will bears the burden of proving all four elements.").

## B. Confidential Relationship

Buck also contends that a confidential relationship existed between Mock and Langer, and when paired with Mock's involvement in the will's

execution,[1] created a suspicion of undue influence. *See id.* at 675.

Confidential relationships can include fiduciary relationships or relationships where one party places continuous trust in the skill or integrity of another regarding their important affairs such that the trusted individual can exercise dominion over the other. *Mendenhall v. Judy*, 671 N.W.2d 452, 455 (Iowa 2003). Buck makes no claim that a fiduciary relationship existed between Mock and Langer, so any confidential relationship must be based on Langer's continuous trust in Mock's skill and integrity to assist Langer with her important affairs. *See id.*

The record shows that Mock performed nominal chores for Langer, who otherwise lived independently and handled her own finances. But such things as a family relationship, regular visits, and helping with errands do not establish a confidential relationship. *Geerdes v. Cruz*, 7 N.W.3d 22, 30 (Iowa 2024). The party claiming the existence of a confidential relationship must establish that the person trusted the influencer to handle the person's affairs. *Id.* There is no evidence in the record that Langer placed her trust in Mock's skill and integrity to help with her important affairs. As such, Buck failed to generate a genuine issue of material fact as to whether a confidential relationship existed, so she is not entitled to a suspicion of undue influence. *See Bayer*, 574 N.W.2d at 675.

### C.    Conclusion as to Undue Influence

Because Buck failed to produce evidence to generate a genuine issue of material fact as to Langer's susceptibility to undue influence, Mock was

---

[1] Instead of taking Langer to her lawyer's office in Harlan to sign the will, Mock took her to the Pottawattamie County sheriff's office (where Mock's son is the sheriff) to sign it.

entitled to judgment as a matter of law.  Thus, the court did not err in granting summary judgment on Buck's undue-influence claim.

## III.    Intentional Interference with Inheritance

Buck also claims the court erred by granting Mock summary judgment on Buck's intentional-interference-with-inheritance claim.  To establish such a claim Buck must prove: (1) she had a reasonable expectation of receiving an inheritance; (2) Mock committed an intentional and independent legal wrong; (3) Mock's purpose was to interfere with Buck's expectancy; (4) Mock's conduct caused the expectancy to fail; and (5) Buck suffered economic loss as a result.  *See Buboltz v. Birusingh*, 962 N.W.2d 747, 753 (Iowa 2021).  Buck points to undue influence as the independent legal wrong satisfying the second element.  As analyzed above, Buck did not generate a genuine issue of material fact on her undue influence claim, so that cannot be the basis for satisfying the second element.  *See In re Est. of Elsen*, No. 21-0959, 2022 WL 3069489, at *6 (Iowa Ct. App. Aug. 3, 2022) (finding that an intentional-interference claim that is based on undue influence fails when the undue-influence claim fails).  We affirm the district court's grant of summary judgment to Mock on this claim.

## IV.    Conclusion

Because Buck failed to produce evidence generating a genuine issue of material fact as to the first element of her undue-influence claim, and undue influence is the only legal wrong supporting her claim for intentional interference with inheritance, Mock was entitled to judgment as a matter of law.  Thus, the district court did not err in granting Mock's motion for summary judgment, and we affirm.

**AFFIRMED.**